UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *In re* | ) | Case No. HT 04-12515 [-jrh] |
| | ) | |
| SECOND CHANCE BODY ARMOR, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| THOMAS F. REILLY, as ATTORNEY GENERAL of the Commonwealth of Massachusetts, | ) | 04 - 12417 PBS |
| | ) | |
| Plaintiff, | ) | (Removed from the Suffolk Superior Court; No. 03-5450) |
| | ) | |
| v. | ) | |
| | ) | C.A. No. _____ |
| SECOND CHANCE BODY ARMOR, INC., TOYOBO AMERICA, INC. and TOYOBO COMPANY, LTD., | ) MAGISTRATE JUDGE _____ | |
| | ) | |
| Defendant. | ) | |

RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## NOTICE OF REMOVAL

Defendants Toyobo America, Inc. and Toyobo Company, Ltd. (collectively "Toyobo )

hereby give notice of their removal of Civil Action No. 03-5450 from the Superior Court,

Suffolk County, Commonwealth of Massachusetts, to the United States District Court for the

District of Massachusetts. This Notice of Removal is filed pursuant to 28 U.S.C. § 1452(a).

The Toyobo defendants represent as follows:

1.    On or about November 17, 2003, the above-captioned Plaintiff (the "Plaintiff")

initiated a lawsuit against Toyobo and Second Chance Body Armor, Inc. (the "Debtor") in the

Superior Court of Suffolk County in the Commonwealth of Massachusetts, Case No. 03-5450,

styled <u>Thomas F. Reilly, as Attorney General of the Commonwealth of Massachusetts</u> v.
<u>Second Chance Body Armor, Inc., Toyobo America, Inc. and Toyobo Company, Ltd.</u> (the
"Lawsuit").

2.     On October 17, 2004, the Debtor commenced a case under Chapter 11 of
Title 11 of the United States Code captioned *In re* Second Chance Body Armor, Inc., Case
No. HT 04-12515 [-jrh] (the "Bankruptcy Case"). The Bankruptcy Case currently is pending
in the United States Bankruptcy Court for the Western District of Michigan (the "Michigan
Bankruptcy Court").

3.     Toyobo is removing the above-entitled Lawsuit (the "Removed Action").

4.     The Removed Action is a civil action over which the United States District
Court has original jurisdiction under 28 U.S.C. § 1334(b). Toyobo is entitled to removal to
this Court pursuant to 28 U.S.C. § 1452 because the Removed Action is either a core
proceeding or "related to" the Bankruptcy Case within the meaning of 28 U.S.C. § 1334(b).

5.     The Removed Action is not a proceeding before a United States Tax Court or a
civil action by a governmental unit to enforce such governmental unit's police or regulatory
power.

6.     The Lawsuit is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)
involving, among others, claims by the Plaintiff for damages and other relief against the
Debtor and Toyobo based on the Plaintiff's assertions that bullet resistant vests that the Debtor
manufactured using Zylon®, a fiber designed and manufactured by Toyobo, do not have the
qualities and performance characteristics that the Debtor and Toyobo allegedly warranted and
represented.

7.    To the extent that the Lawsuit is not a core proceeding and the Lawsuit is heard by the Michigan Bankruptcy Court or by the bankruptcy court in this district, Toyobo consents to the entry of final orders or judgment by the Michigan Bankruptcy Court or the bankruptcy judge, as the case may be.

8.    A copy of the First Amended Complaint in the Removed Action is attached hereto. Pursuant to Federal Rule of Bankruptcy Procedure 9027(e)(2), Toyobo will hereinafter file copies of all pleadings in the Removed Action with the Clerk of this Court.

9.    Toyobo reserves any and all rights, defenses, or objections that Toyobo or any of its affiliates may have in the Removed Action, including, but not limited to, those that were raised in response to the First Amended Complaint filed by the Plaintiff in the Removed Action and including, but not limited to, those based on improper or inadequate service and lack of jurisdiction in the Lawsuit.

WHEREFORE, Toyobo removes the action now pending in the Superior Court, Suffolk County, Commonwealth of Massachusetts, Case No. 03-5450, styled Thomas F. Reilly, as Attorney General of the Commonwealth of Massachusetts v. Second Chance Body Armor, Inc., Toyobo America, Inc. and Toyobo Company, Ltd.


Dated:  November 12, 2004

TOYOBO COMPANY, LTD. and TOYOBO
AMERICA, INC.

By its attorneys,

Neil P. Motenko (BBO #358160)
Rebecca L. Shuffain (BBO #650715)
NUTTER MCCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000


OF COUNSEL:
Arvin Maskin
Peter A. Antonucci
John B. Strasburger
Joanne M. McLaren
WEIL, GOTSHAL & MANGES LLP
767 Fifth Ave.
New York, NY 10153
(212) 310-8000

## CERTIFICATE OF SERVICE

I, Neil P. Motenko, hereby certify that on the 12th day of November, 2004, I caused a
true and accurate copy of the within Notice to be served by hand on each other party of record
in the Removed Action.

Neil P. Motenko


1378464.2

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    CIVIL ACTION NO.

$O3 \ S \ 450$

| | |
|---|---|
| THOMAS F. REILLY, as ATTORNEY GENERAL of the Commonwealth of Massachusetts, | ) ) ) ) |
| Plaintiff | ) ) ) |
| v. | ) ) **FIRST AMENDED COMPLAINT** |
| SECOND CHANCE BODY ARMOR, INC., and TOYOBO OF AMERICA, INC., and TOYOBO CO., LTD. | ) ) ) ) |
| Defendants. | ) ) ) |

## INTRODUCTION

1.      Thomas F. Reilly, Attorney General of Massachusetts, brings this action in the public interest, pursuant to G.L. c. 93A, §4, seeking injunctive and monetary relief from the sellers and manufacturers of defective bullet resistant vests, constructed of Zylon, and classified as levels IIA and II pursuant to standard 0101.04 from the National Institute of Justice (hereinafter referred to as "the product") and which were sold to and used by state and local law enforcement agencies and personnel in the Commonwealth.  For the past five years the defendants have represented and warranted that Zylon constructed light weight bullet resistant vests were, in fact, bullet resistant and safe for their intended purpose, and would provide consumers with the necessary protection from serious injury or death for a five-year period,

1

which is the industry standard.  Notwithstanding these representations and warranties the defendants' products were, in fact,  not merchantable, and free of defects, as warranted for the five-year expected life of the product because the Zylon construction degraded, losing product strength, at an accelerated rate.  The accelerated rate of degradation, documented in information released by both defendants, in turn rendered these products unfit for use as bullet resistant vests for the full five years that law enforcement consumers would be expected to use this product. Defendants continued to design or manufacture or sell Zylon intended for use in the product to consumers, law enforcement agencies and officers, in the Commonwealth until September 15, 2003.    Upon information and belief there are more than 5,000 such Zylon constructed products in active use by various law enforcement officers throughout the Commonwealth.

Information made available by the defendants and as a result of an ongoing investigation by the Office of the Attorney General has caused the Attorney General to conclude that light weight bullet resistant vests, constructed with Zylon, and classified as Type IIA or II under the National Institute of Justice Standard 0101.04, and specifically, Ultima and Ultimax vests sold by Second Chance, are defective and are in breach of the defendants warranties' in violation of G.L. c. 93A §2 and the regulations promulgated by the Attorney General.

2.    The Attorney General brings this action pursuant to the Massachusetts Consumer Protection Act, G.L. c.93A, § 4, seeking to make the consumers whole, through either a program to replace the product or offer full restitution to Massachusetts consumers, such as law enforcement agencies and officers, who have purchased the product since August 31, 1998. Those remedies include restitution, civil penalties, injunctive relief, costs and attorney fees.

3.    Massachusetts consumers, namely, law enforcement officers who wear Zylon

2

constructed products, products that were designed, manufactured, marketed, distributed or sold to Massachusetts consumers, may be at risk of serious physical harm or even death due to defects with the subject product. Therefore, the Attorney General seeks injunctive relief from this Court to prohibit the future sale or marketing of Zylon constructed light weight bullet resistant vests classified under National Institute of Justice standard 0101.04 class II A or II to consumers in the Commonwealth of Massachusetts by the defendants or their agents; and to further order that the defendants replace all of the products sold, since August 31, 1998, in Massachusetts or to Massachusetts consumers or make full restitution to these consumers for the defective product that was marketed or distributed or sold in the Commonwealth or to Commonwealth consumers.

## JURISDICTION & VENUE

4.     The Attorney General is authorized to bring this action pursuant to G.L. c. 93A, § 4.

5.     This Court has jurisdiction over this matter pursuant to G.L. c. 214, § 1, G.L. c. 93A, §4.  Venue is proper pursuant to G.L. c. 223, § 5 and G.L. c. 93A, § 4.

## PARTIES

6.     The plaintiff, Thomas F. Reilly, is the Attorney General of Massachusetts and authorized by law to commence this action under G.L. c.93A, §4 because it is in the public interest.

7.     The defendant Toyobo Co., LTD ("Toyobo") is a Japanese corporation having its principal place of business in Osaka, Japan.  Toyobo is a manufacturer of, among other things, polymer fibers and fabrics which are marketed by Toyobo for inclusion by its customers as

3

component parts in a variety of products, worldwide. Toyobo manufactures a product under the brand name "Zylon," which is a polymer fiber sold to manufacturers of various goods throughout the United States for use in finished products. Specifically, Zylon, manufactured by Toyobo, was sold with the intent that it was to be manufactured into bullet resistant vests manufactured by Second Chance and other similarly situated companies. Upon information and belief, Toyobo regularly engages, solicits or transacts business and derives substantial revenue from the Commonwealth from such contacts within the Commonwealth of Massachusetts. Zylon, manufactured by Toyobo, was used in the subject products which were marketed, sold and used by Massachusetts consumers. Upon information and belief Zylon is exclusively sold by Toyobo and Zylon is a registered trademark of Toyobo. Toyoby manufactures and markets its products for sale and for use by consumers worldwide, including marketing it for Massachusetts consumers, and Toyobo derives substantial revenue from these sales as a result of use of its product and from use by consumers in the Commonwealth.

8.    Defendant, Toyobo of America, Inc. ("Toyobo America") is a New York corporation having its principal place of business in New York City, New York. Upon information and belief, Toyobo America is a wholly-owned subsidiary of Toyobo and is the exclusive sales and distribution arm of Toyobo products in the United States. Upon information and belief, Toyobo America sells and distributes Zylon to other distributers, manufacturers and consumers in the United States market. Specifically, Toyobo America sells and distributes the Zylon fiber used in the subject product that was marketed, sold and used in the Commonwealth of Massachusetts.

9.    Defendant, Second Chance Body Armor, Inc. ("Second Chance") is a Michigan

4

corporation with a principal place of business in Central Lake, Michigan. Second Chance has an office and/or manufacturing facility at 404 Nash Road, New Bedford, Massachusetts. Second Chance is in the business of designing, manufacturing, marketing, distributing and selling bullet resistant vests and other body armor including the subject product, in Massachusetts and throughout the United States. Second Chance designed, manufactured, distributed and sold bullet resistant vests constructed with Zylon, which it purchased from Toyobo and Toyobo America, to consumers in the Commonwealth. Upon information and belief Second Chance no longer sells light weight bullet resistant vests, constructed of Zylon, and classified under National Institute of Justice (NIJ) Standard 0101.04 as type IIA and II vests.

## FACTS

### Zylon Used As A Component Part

10.     In or about 1998, Toyobo began to manufacture and sell Zylon® . Zylon is purported to be a high performance, polymer fiber whose qualities were its apparent strength and durability suitable to many industrial and consumer uses. Zylon is the trade name given to the polymer fiber by Toyobo. Toyobo is the exclusive manufacturer of Zylon and it marketed Zylon to customers as a high performance fiber suitable for use in protective cloth, heat resistant materials, industrial cable, reinforcement for cement and for the aerospace industry. Specifically, Toyobo marketed its Zylon fiber for use as a component part in protective clothing including light weight bullet resistant vests. Toyobo sold its Zylon fiber to Second Chance and other manufacturers of body armor representing that its fiber was free of defects and fit for purpose of constructing light weight bullet resistant vests.

11.     Upon information and belief, Toyobo America was the exclusive distributer of

5

Toyobo's Zylon products in the United States to manufacturers of body armor products including Second Chance. Specifically, Toyobo and its American subsidiary Toyobo America, marketed its Zylon as having the appropriate density, tensile strength, heat, light and moisture resistance and flexibility necessary to be a material component in body armor and other protective clothing such as bullet resistant vests used by law enforcement personnel.

12.    Toyobo and Toyobo America warrant that their Zylon is free of defects, is merchantable and fit for use in bullet resistant vests. They further represent that Zylon will maintain its product integrity for at least five years, which is consistent with the industry standard. Toyobo and Toyobo America warranted that Zylon could be used safely and with confidence for the intended purposes for the entire five-year period.

13.    Second Chance recognized a market demand for body armor which provided the user with protection afforded by the then-current body armor products, but at a lighter weight. In or about 1998, Second Chance was in the business of designing, manufacturing, distributing and selling various body armor products including bullet resistant vests through various sales channels to state and federal law enforcement agencies.

14.    Second Chance purchased Zylon from Toyobo and or Toyobo America and incorporated Zylon as a component part in Second Chance's new "Ultima" and "Ultimax" vests. Second Chance marketed their Zylon vests in the Commonwealth, and throughout the country as meeting the market demand for a safe, effective, reliable lightweight, bullet resistant vest.

15.    In or about January 1999, the Commonwealth's Occupational Services Division (OSD), on behalf of its various law enforcement agencies, entered into a contract ("the contract") with Dedham Sportsman's Center, Inc. d/b/a AAA Police Supply ("AAA") whereby AAA

agreed to sell to the Commonwealth 's law enforcement agencies and personnel bullet resistant vests that were manufactured by Second Chance and contained Zylon made by Toyobo and sold or distributed by Toyobo America. The contract permitted the Commonwealth's law enforcement agencies and personnel to purchase Second Chance vests directly from AAA. The original contract between AAA and the Commonwealth lasted for a twelve-month period but has been renewed in subsequent years, with the same terms, conditions and warranties. The contract was most recently renewed for one year on January 5, 2003.

16.    Under the terms of the contract,  AAA agreed to sell, at pre-negotiated prices, Ultima and Ultimax body armor manufactured by Second Chance, to Massachusetts law enforcement agencies and personnel who participated in the OSD contract program. These products were constructed with Zylon.

17.    The terms of the OSD contract warranted, among other things, that the product would:

    a.    be free from any defects affecting durability, service ability or the safety of the user;

    b.    be in accordance with first-class commercial textile standard practices for the intended purpose;

    c.    meet or exceed the minimum performance requirements as specified in National Institute of Justice Standards;

    d.    for a minimum of five (5) years meet the ballistic-resistant and deformation requirements of National Institute of Justice(NIJ) Standards then in existence or future editions of NIJ Standards;

    e.    have armor panels that would have a warranty of a minimum of five (5) years from the date of purchase, against defects in materials and workmanship; and

    f.    have armor covers that would have a warranty for a period of twenty-four months

from the date of purchase against defects in materials and workmanship.

18.    Since 1998, Massachusetts state and local law enforcement agencies and personnel have purchased more than 5,000 Second Chance Ultima and Ultimax vests which were constructed with Zylon and which were sold or manufactured or marketed or distributed by Toyobo and Toyobo America.

19.    The products sold under the OSD contract are within the warranty period.

## Toyobo's and Toyobo America's knowledge of Zylon Degradation

20.    By at least 2000, and as a result of internal testing,  Toyobo knew that Zylon suffered from severe and accelerated degradation when exposed to light, heat and humidity. Upon information and belief, Toyobo knew, and reasonably should have known that exposure to common light sources caused the Zylon product to degrade at a rate 20% faster than expected or warranted. Exposure to heat and humidity further accelerated the rate of degradation of Zylon fibers.

21.    Upon information and belief, Toyobo  had knowledge, prior to its testing in 2000, that its Zylon fiber degraded at an accelerated rate even under expected use conditions.

22.    As a result of its testing, Toyobo concluded that the safety and durability warranties previously made with respect to Zylon product quality and used in bulletproof vests were inaccurate.  This knowledge should have prompted Toyobo and Toyobo America to immediately warn its consumers and end users, that their testing raised serious safety concerns for those using Zylon  in the manufacture of light weight bullet resistant vests, specifically, Type IIA and II.  However, they failed to promptly, fully and adequately warn the consumers and end users.

8

23.     In fact, the information that was released by Toyobo and Toyobo America could have easily misled consumers. For example, in or about September of 2001, Toyobo published a technical bulletin that described Zylon's properties and behavior under extreme conditions (the "2001 bulletin"). In this bulletin, Toyobo announced that the strength of its Zylon fiber decreased sharply, perhaps as much as 65%, after six months exposure to sunlight. The 2001 bulletin also announced an approximately 25-35 % loss of strength in Zylon when it was exposed to two 35 watt fluorescent lamps, for a period of several weeks. However, Toyobo and Toyobo America failed to acknowledge that these were not "extreme" conditions for typical law enforcement users who could reasonably be expected to be subject to a variety of heat, humidity and sunlight conditions. Moreover, at this time, these defendants did not address the potential for their product to degrade from exposure to heat, humidity and light conditions even before it was incorporated into the finished product. In other words, the Zylon degradation process begins before it is in a completed vest.

24.     Toyobo America, upon information and belief, knew, or reasonably should have known about these test results and should have warned its customers and withdrawn any explicit or implicit endorsement or warranty that Zylon was fit for the intended five-year life of light weight bullet resistant vests.

25.     Though Toyobo ultimately disclosed its test results to the defendants, it failed to adequately warn of the danger of using Zylon in the construction of light weight bullet resistant vests classified under NIJ Standard as Type IIA or II. In fact Toyobo and Toyobo America's failure to adequately warn manufactures using its product led to a decision by Second Chance, and perhaps other manufacturers, to continue to use Zylon in the construction of their light

9

weight bullet resistant vests, including without limitation the Ultima and Ultimax armor. The defendants continued to market, distribute and sell these products for sale to law enforcement officers in Massachusetts notwithstanding knowledge that Zylon, used in this application, was not fit for its intended use and was not free of all defects.

26.     Upon information and belief, Toyobo and Toyobo America, knew or reasonably should have known that Zylon degraded more quickly than intended or expected and degraded to create potential safety and efficacy concerns for end users well before the expected five-year warrantied life span for the product, and failed to adequately warn all consumers of these dangers.

27.     The degradation of Zylon was underscored when, on June 23, 2003, a Forest Hills, Pennsylvania police officer sustained serious injuries as a result of the failure of a Second Chance vest made with the Zylon components manufactured less than one year prior to the shooting. In a July 11, 2003 statement entitled: "Official Statement Regarding Forest Hills, PA Shooting" Second Chance acknowledged the Forest Hills shooting and admitted that one of its "Ultima level 2A [vests] was penetrated by a .40 caliber projectile." This was a type of bullet that the Zylon constructed vest was both represented and expected to stop without permitting it to penetrate the vest and cause injury to the end user.

28.     However, even after this incident the defendants continued to design, manufacture, market, distribute and sell bullet resistant vests constructed with Zylon.

29.     The defendants knew or should have known that the vests containing Zylon were defective and unfit for their intended uses and for their intended serviceable life span. The defendants also knew, or should have known, that these defective products presented a serious

10

safety risk for all users of the vests.

30    Toyobo and Toyobo America continued to sell Zylon to Second Chance and other manufacturers. Toyobo and Toyobo America knew that their product would be used in the manufacture of bullet resistant vests even though they had access to data, or they should have known data, which alerted them to the serious safety issues posed by the accelerated degradation.

31.    Despite knowledge that Zylon was defective for its intended use of manufacturing a light weight bullet resistant vest that was classified as a Type IIA or II, under NIJ Standard 0101.04, and that would not provide its users with a safe product for at least five years of service, the defendants continued to design, distribute, manufacture, market and sell Zylon for use in the subject product. Further, defendants continued to warrant that their products were safe, that they would satisfy all warranties including fitness for their intended use and that they would meet or exceed all National Institute of Justice Standards. Second Chance continued to advertise and sell the vests as merchantable and fit for their intended use. Only Second Chance has, as of September 2003, voluntarily stopped selling Zylon constructed type IIA and II vests to Massachusetts consumers.

32.    Upon information and belief, Toyobo and Toyobo of America continue to promote and sell Zylon to other manufacturers representing that Zylon is fit for use in light weight Type IIA or II bullet resistant vests. Toyobo and Toyobo of America's failure to adequate warn and safeguard consumers is further evidence of a breach of warranty and G.L.c. 93A §2 violation.

33.    On September 8, 2003, Second Chance disclosed to its purchasers of its Ultima and Ultimax products that the Zylon vests wore out sooner than expected and that there was a

potential safety issue for the users.

34.    Upon information and belief, they may be other manufacturers of Type IIA or II light weight bullet resistant vests constructed with Zylon who have not adequately warned consumers of the potential safety concerns arising from the accelerated degradation process associated with Zylon used in this product application thereby breaching their warranties and posing a risk of serious harm to Massachusetts consumers.

## COUNT ONE AGAINST ALL DEFENDANTS

### Massachusetts Consumer Protection Act, G.L. c. 93A, § 4

35.    The plaintiff repeats each and every allegation contained in paragraphs one through 34 of the complaint, as if set forth herein.

36.    The defendants have violated the Consumer Protection Act, G.L. c. 93A § 2(a), and regulations promulgated thereunder, by engaging in various unfair or deceptive acts or practices, including but not limited to:

a.    misrepresenting to various consumers throughout the Commonwealth that the products they sold were merchantable, fit for their intended purpose, and would have a five-year serviceable life span. Such misrepresentation and failures are in violation of 940 CMR 3.02(2), 940 CMR 3.05(1), and 940 CMR 3.08(2); additionally;

b.    breaching express warranties under the contract in violation of 940 CMR 3.08 (2);

c.    breaching implied warranties under the contract in violation of 940 CMR 3.08 (2);

d.    failing to disclose to consumers that the vests it sold were defective and posed a threat to the consumers' lives and safety in violation of 940 CMR 3.16 (2).

37.    Defendants knew or should have known that their acts and practices violated

12

Mass. Gen. L. c. 93A, §2(a) and the regulations promulgated thereunder.

38.    On October 30, 2003, **Attorney General Thomas Reilly** sent a demand letter to defendants, Toyobo America and Second Chance pursuant to Gen. L. c. 93A, §4.

39.    The Attorney General is continuing its investigation to identify other companies who have purchased Zylon from Toyobo and/or Toyobo America and manufactured, marketed, distributed or sold bullet resistant vests constructed of Zylon that are marketed, sold or used in the Commonwealth.

40.    Under the statutory powers G.L. c. 93A § 4, to protect consumers, especially given the potential hazard this product poses for so many law enforcement users, the Attorney General maintains that the defendants have, by designing, manufacturing, marketing, distributing or selling these defective products for use within the Commonwealth violated G.L. c. 93A § 2 and that it is in the public interest that the Attorney General brings this action on behalf of Massachusetts consumers, specifically town, city and municipal law enforcement personnel to seek a full and complete remedy on behalf of these consumers.

## RELIEF REQUESTED

WHEREFORE, the Attorney General requests that this Court grant the following relief, after a hearing on the merits:

1.    Pursuant to Mass. R. Civ. P. 65, after notice and a hearing, enter an order granting the Commonwealth a preliminary injunction which shall order that:

   a.    defendants to cease and desist from this day forth, from selling light weight bullet resistant vests constructed of Zylon and which are classified as NIJ type IIA or II to Massachusetts consumers:

13

b.  defendants Toyobo and Toyobo of America provide the Attorney General with a list of all customers (names and addresses) who purchased Zylon for use in manufacturing a type IIA or II vest in the United States;

c.  defendants Toyobo and  Toyobo of America immediately produce all testing and other relevant data concerning or relating to the safety and tensile strength, strength retention, life span or any other safety related testing or data performed by or at the request of Toyobo or within Toyobo's care, custody or control relating to Zylon and its application in body armor or bullet resistant vests, and.

d.  enjoin the defendant Second Chance from eliminating or reducing the benefits extended under its October 6, 2003 bulletin providing for a "Performance Pac" upgrade, warranty adjustment/trade in program or Monarch Summit Replacement trade-in, at the buyers' option, and to offer Massachusetts the full benefit of any legal settlement or program that would upgrade or enhance the October 6, 2003 program so that no consumer, outside of Massachusetts, obtains a more favorable term of settlement than that provided to a Massachusetts consumer.

3.  Order defendants to replace their defective products that were sold to Massachusetts consumers, or sold within the Commonwealth, since August 31, 1998 or make full restitution to the consumers of these products;

4.  After a hearing on the merits permanently enjoining the defendants from the practices outlined above in 1 - 3;

5.  Award damages including, but not limited to, equitable relief, civil penalties of not more than $5,000.00 for each violation of G.L. c.  93A § 2, reasonable costs investigation,

14

reasonable costs of litigation, and attorneys' fees; and

      6.     All other relief, including attorney fees, available to the Attorney General pursuant

to G.L. c. 93A, §4.

                                     COMMONWEALTH OF MASSACHUSETTS

                                     By its Attorney,
                                     THOMAS F. REILLY
                                     ATTORNEY GENERAL

                                     Matthew Q. Berge BBO #560319
                                     Thomas V. Digangi BBO #648415
                                     Assistant Attorneys General
                                     200 Portland Street
                                     Boston, MA   02114
                                     (617) 727-2200

DATED: December 5, 2003

15

JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Thomas F. Reilly, as Attorney General of the Commonwealth of Massachusetts

**DEFENDANTS**

Toyobo America, Inc. and Toyobo Co., Ltd. and Second Chance Body Armor, Inc.

(b) County of Residence of First Listed Plaintiff    **Suffolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)

Rosemary Connolly,                    (617) 727-2200
Commonwealth of Massachusetts
Office of the Attorney General
200 Portland Street, Boston, MA  02114

Attorneys (If Known)
Neil P. Motenko                        (617) 439-2000
Nutter McClennen & Fish LLP
World Trade Center West, 155 Seaport Blvd.
Boston, MA  02210

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" In One Box for Plaintiff
(For Diversity Cases Only)                                  and One Box for Defendant)

|  | DEF |  | DEF |
|---|---|---|---|
| Citizen of This State ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State ☐ 4 | ☐ 4 |
| Citizen of Another State ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country ☐ 3 | ☐ 3 | Foreign Nation ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This Court has jurisdiction under 28 U.S.C. § 1334(b) and removal is appropriate under 28 U.S.C. § 1452.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY   (See instructions):

11/12/04          JUDGE          DOCKET NUMBER

DATE  11/12/04          SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Thomas F. Reilly, as Attorney General for the Commonwealth of__ Massachusetts v. Toyobo of America, Inc., et al

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

☐ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☐ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. for patent, trademark or copyright cases

☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

☐ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)     YES ☐  NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?     YES ☐  NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?     YES ☐  NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).     Not applicable     YES ☐  NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division ☐   Central Division ☐   Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)     YES ☐  NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___Neil P. Motenko___
ADDRESS ___Nutter McClennen & Fish LLP, World Trade Center West, 155 Seaport Blvd., Boston, MA 02210___
TELEPHONE NO. ___(617) 439-2000___

(Coversheetlocal.wpd - 10/17/02)