UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re* | Case No. HT 04-12515 [-jrh] |
| | |
| SECOND CHANCE BODY ARMOR, INC., | Chapter 11 |
| | |
| Debtor. | (Jointly Administered) |
| | |
| THOMAS F. REILLY, as ATTORNEY GENERAL of the Commonwealth of Massachusetts, | |
| | |
| Plaintiff, | |
| | (Removed from the Suffolk Superior Court; No. 03-5450) |
| v. | |
| | C.A. No. _____ |
| SECOND CHANCE BODY ARMOR, INC., TOYOBO AMERICA, INC. and TOYOBO CO. LTD., | |
| | |
| Defendant. | |

**04 - 12417 PBS**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Defendants Toyobo Co. Ltd. ("Toyobo Japan") and Toyobo America, Inc. ("Toyobo

America") (sometimes, collectively, "Toyobo" or the "Toyobo Companies") hereby submit this

memorandum of law in support of their motion – pursuant to 28 U.S.C. § 1404(a) – to transfer

this action to the United States District Court for the Western District of Michigan.  Two related

cases are pending in the Western District of Michigan, the bankruptcy case of Second Chance

Body Armor, Inc.  ("Second Chance") *and* litigation virtually identical to the instant case (save

the identity of the plaintiff) formerly styled National Association of Police Organizations, Inc.,

et.al. v. Second Chance Body Armor, Inc., et. al., Case No. 04-8018 in the Circuit Court in the

County of Antrim, State of Michigan (the "NAPO Action").  Because both of these cases – and

the other virtually identical cases pending around the country that Defendants are seeking to have

transferred to this Court – are integrally related to the present case, transfer would serve the convenience of the parties and witnesses, and would be in the interest of justice.

## I.
## SUMMARY OF ARGUMENT

As demonstrated below, the relevant facts and law overwhelmingly weigh in favor of transfer of venue to the Western District of Michigan. At its core, this is a putative breach of warranty action and Second Chance – a Michigan corporation named as a defendant in this action – manufactured and sold the vests having the very warranties that Plaintiff alleges were breached. Yet, this litigation cannot proceed against Second Chance in this Court because of Second Chance's bankruptcy filing. In fact, this action is not the only putative class action against Second Chance and Toyobo affected by Second Chance's bankruptcy; it is just one of *many* cases pending across the country wherein various named plaintiffs – on behalf of members of the same purported class that Plaintiff herein purports to represent – have sued Second Chance and Toyobo as Defendants alleging defects in bullet resistant vests manufactured by Second Chance. Because of the central role that Second Chance and its witnesses, documents, and experts play in the prosecution of these cases, the cases – and Toyobo's ability to defend itself in them – have been stopped in their tracks due to the Second Chance bankruptcy.

But the bankruptcy case of Second Chance *is* proceeding in the bankruptcy court for the Western District of Michigan and the NAPO Action is now pending there. Plaintiff and Toyobo will be required to file proofs of claim in Second Chance's bankruptcy case if they wish to preserve any claims they have against Second Chance, and the United States Bankruptcy Court for the Western District of Michigan (the Bankruptcy Court") – as part of its "core" jurisdiction – will liquidate such claims. Thus, through the coordination of discovery and other pre-trial purposes, transfer to the Western District of Michigan will foster the efficient and consistent

administration of the bankruptcy case, the <u>NAPO</u> Action, this action and all of the other virtually identical actions that Defendants are seeking to transfer to the Western District of Michigan. Therefore, the convenience of the parties and witnesses – and the interest of justice – clearly favor the Western District of Michigan over the federal district courts of Massachusetts.

In fact, one of the plaintiffs in an action virtually identical to this one – Officer Lemmings of <u>Lemmings, et al. v. Second Chance Body Armor, Inc., et al.</u> – has already obtained Michigan counsel and filed an appearance in Second Chance's bankruptcy case, thereby voluntarily submitting himself to the jurisdiction of the Bankruptcy Court. Thus, even a plaintiff in a virtually identical action recognizes – as Plaintiff here must – the central role of the Bankruptcy Court and cannot complain that the Western District of Michigan is an inconvenient forum. In fact, the proof of claim that Officer Lemmings (and the other plaintiffs) *must* file to have any recovery against Second Chance will emanate from virtually the same purchases of Second Chance bullet resistant vests that form the basis of this action and all of the other actions that Defendants are also seeking to transfer to the Western District of Michigan.[1]  Moreover, Officer Lemmings, before the state court, went so far as to argue that Michigan law should be applied to the putative classes' breach of warranty claims, thus further evidencing that the Western District of Michigan is anything but an inconvenient forum to in which to litigate the claims asserted in this action.

The core claims of Plaintiff against Second Chance, and any claims Second Chance and Toyobo may have against one another, all have a direct impact on Second Chance's bankruptcy estate. Accordingly, for these and other reasons, the convenience of the parties and witnesses

---

[1] The Notice of Appearance filed by Officer Lemmings was filed jointly with a named plaintiff – Officer LaBrosse – in an action that Defendants are also seeking to transfer to the Western District of Michigan. Both Officer Lemmings and Officer LaBrosse are represented by the same Plaintiffs' attorney – Allan Kanner – in their underlying cases as well.

and the interest of justice all militate in favor of the transfer of this action to the Western District of Michigan.

## II.
## FACTUAL BACKGROUND

### A.    The Instant Action

On or about November 17, 2003, Thomas F. Reilly, Attorney General of Massachusetts brought this action pursuant to the Massachusetts Consumer Protection Act, G.L. c. 93A, §4, against Second Chance, Toyobo Co., Ltd. and Toyobo America.  The Commonwealth brought this claim on behalf of Massachusetts consumers, including state and local law enforcement agencies and personnel in Massachusetts, who, since August 31, 1998, purchased Second Chance bullet resistant vests that included fabric using Zylon fiber manufactured by Toyobo. (See First Amend. Compl. ¶3)  The Commonwealth alleges that Second Chance and Toyobo America[2], as well as Toyobo Co., a foreign corporation the Commonwealth attempted to serve, but has not served, pursuant to the Hague Convention, have misrepresented the merchantability, life expectancy and fitness of their products, breached express and implied warranties relating to their products, and failed to disclose certain defects in Second Chance vests, all in violation of Massachusetts General Laws Chapter 93A. (First Amend. Compl. ¶36.)  Plaintiff alleges, incorrectly, that Toyobo America is the exclusive distributor of Zylon in the United States and that it sold and distributed the Zylon fiber used in the Second Chance vests sold and used in Massachusetts (First Amend. Compl. ¶¶8, 11).

Toyobo America, on February 17, 2004, served the Commonwealth with a motion to dismiss for lack of personal jurisdiction. This motion is still pending.  The Attorney General's

---

[2] As Toyobo America argued in its pending motion to dismiss, it played no role whatsoever in developing, manufacturing, marketing or selling Zylon.

Office has agreed not to aggressively pursue Toyobo Co. or Toyobo America, and not to pursue proper service in accordance with the Hague Convention, apparently reflecting Attorney General Reilly's belief that the primary responsibility for Second Chance's body armor failures lies with Second Chance.

The centerpiece of Plaintiff's allegations against the Toyobo Companies – in the present action and in the other litigations Toyobo is seeking to transfer – is that the Toyobo Companies and Second Chance were "partners" in the development of the bullet-resistant vests that are the subject of the Plaintiff's complaint.  (See First Amend. Compl., generally[hereinafter the "Complaint"]).  Indeed, in the present action, the Complaint treats the Defendants as a collective whole and is couched in language suggesting that the allegations set forth in the Complaint somehow apply equally to each of them.  See id.  The intentional blurring of the respective and altogether distinct roles of Toyobo and Second Chance in the chain of supply – Toyobo Japan, as the manufacturer of a raw material used by another manufacturer to make plies placed in bullet-resistant applications (and nearly 50 other products) and Second Chance as the manufacturer of the vests from which Plaintiff's claims arise – is an essential component to the theory set forth in the First Amended Complaint (the "Complaint") to establish liability against Toyobo.  It also underscores the logic of disposing of the claims in one proceeding.

Plaintiff has characterized the respective roles of Toyobo and Second Chance with respect to the Zylon-containing body armor manufactured by Second Chance in the same fashion in the other litigations filed against Second Chance and Toyobo across the country.  For example, Plaintiffs, in opposition to Toyobo's dilatory, declinatory and peremptory exceptions in the Johnson action currently pending in Louisiana – argued that "Toyobo was a partner with . . . Second Chance throughout the entire development, marketing, and period of sale of Zylon

containing vests to law enforcement in Louisiana, and Plaintiff alleged as much in his petition." (<u>Id.</u> at 7-8.)  Plaintiffs in <u>Johnson</u> also argued that there exists a "community of interests" between Toyobo and Second Chance because each is involved "in the sale, use, manufacture, advertising, insurance or distribution of Zylon or Zylon containing products." (<u>Id.</u> at 6.)

The parties to this action have engaged in discovery, which has included the deposition of a Second Chance employee, as well as production of documents.  On May 26-27, 2004 and June 29-30 the Attorney General's Office deposed Second Chance's 30(b)(6) witness, Paul Banducci. However, on July 2, 2004 the Attorney General's Office sent Second Chance a letter indicating that it will need to depose additional 30(b)(6) witnesses because Paul Banducci was not the most knowledgeable person regarding various technical subjects.  These additional 30(b)(6) depositions of Second Chance Witnesses have not taken place.

Also of note is the fact that extensive discovery has been conducted in the <u>Lemmings</u> action in Oklahoma, which discovery has included depositions of past and present employees of Second Chance.  In <u>Lemmings</u>, the plaintiffs were able to finish their questioning of Second Chance witnesses.  Unlike the <u>Lemmings</u> plaintiffs, however, as of the time of the filing of this motion to transfer, the Toyobo Companies had only just *begun* their questioning of past and present employees of Second Chance.  While a few witness depositions had been completed, others had not been at the time Second Chance filed for bankruptcy.  Furthermore, although Second Chance has produced some documents in the <u>Lemmings</u> case, document production by Second Chance has yet to be completed, and disputes between the Toyobo Companies and Second Chance remain about critical documents Second Chance has yet to produce and about documents containing significant redactions made by Second Chance.  Once such disputed documents are received, Toyobo may need to conduct additional questioning of any of those

Second Chance witnesses that Toyobo did have an opportunity to depose.  Moreover, because Toyobo intends to defend Plaintiff's alleged claims with evidence showing the inadequate design of Second Chance vests and Second Chance's knowledge of the propensities and characteristics of Zylon, it is absolutely essential to Toyobo that such discovery of Second Chance be completed.

### B.    The Bankruptcy Case

On October 17, 2004 (the "Petition Date"), Second Chance filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  Second Chance continues to operate its business and manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  A statutory committee of unsecured creditors has been appointed in the case, and a meeting of creditors is scheduled for November 18, 2004.

On October 20, 2004, the Bankruptcy Court authorized Second Chance to continue its warranty program, allowing certain purchasers of certain models of bullet resistant vests to upgrade them, or receive credits or discounts on future vest purchases. In seeking such relief, Second Chance acknowledged that it "believes that [its] Chapter 11 case will provide [it] with the most efficient and cost-effective means of managing the Zylon litigation and Zylon claims . . . ." (Debtor's Motion To Authorize The Continuation Of Its Warranty Program And To Honor Prepetition Warranty Obligations To Customers ¶ 15.)

•    •    •    •

As the above procedural history demonstrates, Second Chance itself believes that this action is clearly "related to" the Second Chance bankruptcy.  Indeed, in their objection to a motion to lift the automatic stay filed by a plaintiff in one of the personal injury actions against Second Chance and the Toyobo Companies, Second Chance, referencing this action and the

other lawsuits against Second Chance and the Toyobo Companies pending around the country, argued that "all of the lawsuits contain important common issues of law and fact. Those issues relate to whether Toyobo manufactured a defective ballistic fiber, known as Zylon, and whether negligence and warranty theories of liability apply to Second Chance and Toyobo." See Cailteux Aff. Exhibit D at ¶ 7. Second Chance also stated in its objection that "any judicial resolution of Toyobo's indemnity and contribution claims against Second Chance in the [personal injury] lawsuit could have collateral estoppel or other impact on Debtor's ongoing litigation with Toyobo" elsewhere in the country (Exhibit D at ¶ 6). Furthermore, because this action involves claims against Second Chance, it falls within the Bankruptcy Court's "core" jurisdiction under 28 U.S.C. § 157(b)(2)(B) ("Core proceedings include, but are not limited to … allowance or disallowance of claims against the estate …."). Indeed, it appears that a major reason for Second Chance's decision to file a chapter 11 petition was the cost and difficulty of managing this and the other actions pending against it. Therefore, by Notice of Removal by Toyobo, dated November 12, 2004, this action was removed to this Court.

### III.
### ARGUMENT

### FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES, AND IN THE INTEREST OF JUSTICE, THIS ACTION SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF MICHIGAN

28 U.S.C. § 1404(a) ("Section 1404(a)") provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) grants district courts broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); Home Products Int'l-

North America, Inc v. PeopleSoft USA, Inc., 201 F.R.D. 42, 49 (D.C. Mass 2001) (holding that the convenience of the witnesses is an extremely important factor in evaluating a motion to transfer venue under 28 U.S.C. § 1404(a)).

The threshold question in a motion to transfer venue is whether the action "might have been brought" in the proposed transferee district. 28 U.S.C. § 1404(a); In re Josephson, 218 F.2d 174, 181 (1st Cir. 1954) (holding that a district court may transfer any civil action to any district or division where it could have originally been brought). Once it has been concluded that venue is proper in the proposed transferee court, a district court has broad discretion to determine the more convenient forum by examining the convenience of the parties and witnesses and the interest of justice. Dubois v. Moore, 821 F. Supp 792, 793(D.C. of Mass. 1993) (granting defendant's motion to transfer under section 1404(a), based on the convenience of witnesses and the interests of justice).

In this case, in light of the similarities among this action, the Bankruptcy Case, the NAPO Action and the other actions pending around the country, because the principal office of Second Chance is located in the Western District of Michigan, and because the Bankruptcy Court is the *only* court that can resolve *all* the issues raised in this action *and* the others, the convenience of the parties and witnesses and the interest of justice weigh heavily in favor of transferring this action to the Western District of Michigan.

A.    **This Action Could Have Been Brought in the Western District of Michigan.**

Pursuant to 28 U.S.C. § 1409(a) ("Section 1409(a)"), a proceeding "arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The Sixth Circuit – the circuit in which the Bankruptcy Case is pending – has adopted a broad definition of the circumstances under which a civil action is "related to" a bankruptcy case. See

Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.), 86 F.3d 482 (6th Cir. 1996); see also Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579, 583 (10th Cir. 1990). A civil action is "related to" a bankruptcy case if the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Dow Corning, 86 F.3d at 489 (quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).[3]

Applying the foregoing legal standard, this action has the potential to substantially affect the bankruptcy of Second Chance in a multitude of ways and, thus, is clearly "related to" the Second Chance bankruptcy case pending in the Western District of Michigan.

This action arises out of the very same underlying facts, namely purchases of Second Chance bullet resistant vests that undoubtedly will become the subject of proofs of claim filed in the bankruptcy case by Plaintiff herein and plaintiffs in the other litigations across the country. Even Second Chance has acknowledged that "all of the lawsuits contain important common issues of law and fact. Those issues relate to whether Toyobo manufactured a defective ballistic fiber, known as Zylon, and whether negligence and warranty theories of liability apply to Second Chance and Toyobo." See Second Chance's Objection to Relief from Stay, containing this statement at ¶ 7, attached hereto as Exhibit D to the Cailteux Aff. Furthermore, Officer Lemmings and Officer LaBrosse – named plaintiffs in the Oklahoma and Michigan cases,

---

[3] The issue in Dow Corning of whether a civil action is "related to" a bankruptcy case arose in the context of 28 U.S.C. § 1334(b), which confers subject matter jurisdiction of civil actions "arising under title 11, or arising in or related to cases under title 11" to federal district courts. The Sixth Circuit's analysis, therefore, is equally applicable to determining whether a civil action is "related to" a bankruptcy case for purposes of Section 1409(a).

respectively – already have filed a joint Notice of Appearance in the bankruptcy case and presumably will file proofs of claim and assert their claims against the estate of Second Chance.[4]

In addition, should Plaintiff prevail on any theory that Second Chance and Defendants were "partners" or shared a "community of interests" – which theories Toyobo vigorously disputes – the amount of Plaintiff's claims in the bankruptcy case against Second Chance may be reduced by the amount that Plaintiff recovers against Defendants here, and vice versa. See In re Showcase Natural Casing Co., Inc., 54 B.R. 142, 144 (Bankr. S.D. Ohio 1985) (finding "related to" jurisdiction when a holding of liability against the defendant could necessarily reduce plaintiff's recovery against the debtor and vice versa). Similarly, any recovery by Plaintiff in this action could affect the arrangement, standing or priorities of the other creditors of Second Chance. See In re Ames Department Stores, Inc., 190 B.R. 157, 160 (S.D.N.Y. 1995) (finding action brought by lessor to recover rents against lease guarantor was related to the bankruptcy case where "outcome of the dispute has the potential to alter the distribution of the debtor's estate to creditors").[5]

Due to the foregoing potential impact of this action on Second Chance's bankruptcy estate, this present action is clearly "related to" the bankruptcy case as a matter of law. Accordingly, this action could have been brought in the Western District of Michigan in the first instance.

---

[4] As noted above, Officer LaBrosse, also represented by Mr. Kanner, has also filed a notice of appearance in the bankruptcy case.

[5] As stated, Toyobo intends to assert claims for contribution and other damages against Second Chance in its chapter 11 case. Accordingly, Second Chance's estate will only benefit from a recovery by Plaintiff against Toyobo if Toyobo is unsuccessful in pursuing its contribution claims against Second Chance.

**B.    The Convenience of the Parties and Witnesses
Warrants Transfer to the Western District of Michigan.**

The convenience of the parties and witnesses further favors transferring this action to the

Western District of Michigan.  Second Chance employees – including both current and former

employees – will undoubtedly be necessary witnesses to the present action, as well as all of the

other putative class actions filed against Toyobo and Second Chance that Toyobo is seeking to

transfer to the Western District of Michigan.  Indeed, the overwhelming majority of material fact

witnesses reside in Michigan.  Moreover, Second Chance's principal office is located *within the*

*Western District of Michigan* in Central Lake, Michigan.  Significant additional discovery from

Second Chance (and its current and former employees) will therefore inevitably occur in

Michigan.  Furthermore, any attempt to take discovery from Second Chance and its current and

former employees may be subject to the automatic stay imposed by 11 U.S.C. § 362(a).  See,

e.g., Lynch v. Johns Manville Sales Corp., 710 F.2d 1194, 1199-1200 (6th Cir. 1983) (refusing to

stay entire action upon request of nondebtor co-defendants who complained of inability to

conduct discovery because of stay, but stating that judgment was without prejudice to them

seeking authorization to proceed with discovery in the appropriate forum); Johns-Manville Corp.

v. Occidental Chemical Corp. (In re Johns-Manville Corp.), 41 B.R. 926 (S.D.N.Y. 1984)

(modifying the automatic stay, allowing a non-debtor codefendant to conduct limited discovery

upon a debtor codefendant).  Thus, the extent to which any party can conduct such discovery – in

this and the other actions around the country – will need to be resolved by the Bankruptcy Court.

Based on the foregoing, the Western District of Michigan is clearly a forum more convenient –

and more appropriate – than federal district court in Massachusetts.

Indeed, the reality is that Plaintiff's claims against Second Chance will be determined by

the Bankruptcy Court and not this court, and a critical mass of witnesses and evidence are

located in the Western District of Michigan. For the foregoing reasons, litigation of this case in the Western District of Michigan would be far more convenient, less costly and less burdensome for both party witnesses and non-party witnesses. <u>Transamerica Corp.</u> v. <u>Trans-American Leasing Corp.</u>, 670 F. Supp. 1089, 1093 (D.C. Mass. 1987) (holding that transfer is appropriate under 28 U.S.C. § 1404(a) if it promotes the convenience of the witnesses and parties and serves the interests of justice). The Toyobo Companies' motion to transfer should therefore be granted.

**C.      The Interest of Justice Favors Transfer to the Western District of Michigan.**

Courts have held that the interest of justice factor is one of the most important considerations in determining whether to transfer venue. <u>See</u>, <u>e.g.</u>, <u>Hooker</u> v. <u>Burson</u>, 960 F. Supp. 1283, 1291 (M.D. Tenn. 1996) ("It is well established that the interest of justice alone may dictate transferring an action to another federal District Court.") (citing <u>Coffey</u> v. <u>Van Dorn Iron Works</u>, 796 F.2d 217, 220 (7th Cir. 1986)); <u>HFC Commercial Realty, Inc.</u> v. <u>Levine</u>, No. 90 C 2921, 1990 WL 186082, at *5 (N.D. Ill. Nov. 9, 1990) ("The 'interest of justice' component of § 1404(a) may determine a motion to transfer even if the other two factors would suggest a different result.") (unpublished decision).[6] Here, transfer to the Western District of Michigan would serve the interest of justice. Indeed, transfer to the Western District of Michigan will foster the prompt, fair and complete resolution of this action – which is integrally related to the Second Chance bankruptcy case – and will promote judicial efficiency and avoid conflicting results between *at least* two putative class actions involving the same claims, facts, witnesses, and other evidence.

---

[6] Copies of all unpublished decisions cited herein are annexed hereto as Tab "A".

1. **Two Related Actions Are Pending in the Western District of Michigan.**

One of the most compelling factors weighing in favor of transfer of this case is the existence of two related actions – the bankruptcy case and the <u>NAPO</u> action – in the Western District of Michigan. Courts have held that the existence of a related action in the transferee court is the single most persuasive factor in determining the venue in which a dispute would most efficiently be resolved. See, e.g., <u>HFC Commercial Realty</u>, 1990 WL 186082, at *5 ("Perhaps one of the most important elements involved in a consideration of where a dispute will be most efficiently resolved is the existence of a related action in federal court."). "In fact, a motion to transfer should be granted, if a related action is pending in the proposed transferee district." <u>Id.</u>; see also <u>International Brotherhood of Locomotive Engineers</u> v. <u>Consolidated Rail Corp.</u>, No. 94-CV-74457-DT, 1994 WL 808075, at *3 (E.D. Mich. Dec. 30, 1994) (granting motion to transfer venue stating that "[a]ny inconvenience that Plaintiffs might suffer . . . is simply outweighed by the importance of having a single decisionmaker resolve this dispute") (unpublished decision); <u>Roth</u> v. <u>Bank of the Commonwealth</u>, No. 6-71531, 1978 WL 1133, at *3 (E.D. Mich. Dec. 11, 1978) ("crucial point" in court's decision to transfer action is the pendency of a related case in the transferee court) (unpublished decision).

Accordingly, this action should be transferred to the Western District of Michigan, where the bankruptcy case and the <u>NAPO</u> Action – two related actions integrally related to this action – are pending. See <u>HFC Commercial Realty</u>, 1990 WL 186082, at *5-*6 (granting transfer of venue where related bankruptcy case was pending in transferee court); <u>Industri & Skipsbanken A/S</u> v. <u>Levy</u>, 183 B.R. 58, 64-65 (S.D.N.Y. 1995) (same); <u>Goldberg Holding Corp.</u> v. <u>NEP Prods., Inc.</u>, 93 B.R. 33, 35 (S.D.N.Y. 1988) (same). Indeed, through the coordination of discovery directed to Second Chance and the filing and disposition of pre-trial motions

addressing the merits of Plaintiff's "partnership" allegations (and others), transferring this action to the Western District of Michigan will promote the economic and efficient administration of this case, the bankruptcy case, the <u>NAPO</u> Action and all of the other similar state court actions that Defendants successfully transfer to the Western District of Michigan.

Furthermore, transfer of this action to the Western District of Michigan will promote comity by centralizing resolution of all issues involved in this case with those of the estate of Second Chance,[7] <u>see</u> <u>Home Products Int'l-North America, Inc.</u> v. <u>PeopleSoft USA, Inc.</u>, 201 F.R.D. 42, 49 (D.C. Mass. 2001) (granting defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a), to the federal court where a similar action was pending), as well as furthering the goal of the bankruptcy law of bringing all cases involving the debtor under the control of one court. <u>See</u>, <u>e.g.</u>130 Cong. Rec. H7492 (June 29, 1984) (statement of Congressman Kastenmeier) (a goal of the bankruptcy statute is to eliminate "multiplicity of forums for the adjudication of parts of a bankruptcy case."). What is more, putting aside comity and the risk of inconsistent judgments, it would be an unfortunate waste of judicial resources for six to eight courts around the country to be deciding the very same issues that one court – the Western District of Michigan – can, and will, have to decide as part of Second Chance's bankruptcy. Accordingly, the claims asserted in this action by Plaintiff against Toyobo and Second Chance can – and should – be resolved in the Western District of Michigan.

2.     <u>**An Expeditious Resolution Is More Likely in the Western District of Michigan.**</u>

In considering the merits of a transfer, federal courts routinely consider the forum in which a dispute is likely to be most expeditiously resolved. <u>See</u>, <u>e.g.</u>, <u>Toro Co.</u> v. <u>Alsop</u>, 565

---

[7] For example, as stated above, any recovery by Plaintiff in this action may affect the amount of its claim asserted against Second Chance in the bankruptcy case, and the arrangement, standing or priorities of the Debtors' other creditors. <u>See</u> <u>supra</u>, Section (IV)(A).

- 15 -

F.2d 998 (1977) (holding that decision by trial court to transfer was not unreasonable or arbitrary where it found that there was a possibility that the issues would be tried more speedily in the transferee district); Flour Corp. v. Flour Engineers and Constructors, Inc., 446 F. Supp. 777, 779 (W.D. of Okla. 1977) (finding that the action would be disposed of much sooner by the transferee court). Here, this factor also weighs in favor of a transfer to the Western District of Michigan. Only the Bankruptcy Court[8] can determine the extent to which discovery[9] can be conducted against Second Chance and the extent to which any action against Second Chance should be permitted to proceed. In making that determination, one of the factors that the Bankruptcy Court will weigh is the burden on Second Chance's estate caused by the discovery and continued litigation. If the Bankruptcy Court is permitted to coordinate discovery from Second Chance and the litigation of the underlying claims (including briefing and disposition of pre-trial motions), the Bankruptcy Court will not only be able to structure a process that will

_____

[8] Under a local rule of the Western District of Michigan, all proceedings arising under title 11, or arising in or related to a case under title 11, are automatically referred to the bankruptcy judges of that district. Local Rule 83.2 of the Local Rules of Practice and Procedure for the United States District Court for the Western District of Michigan.

[9] Plaintiff may suggest that discovery can be had from Second Chance – without authorization from the Bankruptcy Court – under Rule 45 of the Federal Rules of Civil Procedure authorizing discovery from third parties. Plaintiff also may suggest that the parties may proceed with discovery from former employees of Second Chance without violating the automatic stay. Even if this were correct, Second Chance would surely object to the depositions of former Second Chance employees by virtue of their ability to make admissions on behalf of the company and the possibility that funds from the bankruptcy estate would therefore need to be used to defend such depositions. Because the automatic stay is one of the fundamental protections afforded a debtor by the Bankruptcy Code, many cases have assumed that the automatic stay protects a debtor and its employees from discovery. See, e.g., Lynch v. Johns Manville Sales Corp., 710 F.2d 1194, 1199-1200 (6th Cir. 1983) (refusing to stay entire action upon request of nondebtor co-defendants who complained of inability to conduct discovery because of stay, but stating that judgment was without prejudice to them seeking authorization to proceed with discovery in the appropriate forum); Johns-Manville Corp. v. Occidental Chemical Corp. (In re Johns-Manville Corp.), 41 B.R. 926 (S.D.N.Y. 1984) (modifying the automatic stay, allowing a non-debtor codefendant to conduct limited discovery upon a debtor codefendant). Toyobo believes the matter should be addressed directly by the Bankruptcy Court and that Toyobo should not attempt an end-run around the automatic stay, as may be suggested by Plaintiff.

promote all parties' interest in a timely adjudication of the issues, but also will be able to provide Second Chance the protection against the onslaught of conflicting litigation demands that it sought when it filed its chapter 11 case. The Bankruptcy Court *will* have control over any claims against Second Chance; the only issue is whether the Bankruptcy Court also should maintain control over the claims that are inextricably entwined with such claims. Only by giving the Bankruptcy Court the overall control of *all* the claims in this and the other actions will the timely adjudication of such claims be possible. Otherwise, the Toyobo Companies – and, for that matter, Plaintiff – would be required to proceed simultaneously in multiple forums to obtain critical discovery from Second Chance. Not only would this unnecessarily and artificially protract the trial readiness of this case, but it would be a waste of the parties' resources.

Indeed, in light of the practical considerations making litigation easy, expeditious and inexpensive, the Supreme Court has admonished that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in two different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Continental Grain Co. v. Barge FBl-585, 364 U.S. 19, 26 (1960). Accordingly, the present action should be transferred to the Western District of Michigan.

   3.   **Plaintiff's Choice of Forum Is Entitled to Little Weight.**

"'Courts will not blindly prefer the plaintiff's choice of forum.'" Danuloff v. The Color Ctr., No. 93-CV-73478-DT, 1993 WL 738578, at *3 (E.D. Mich. Nov. 22, 1993) (quoting Waste Distillation Tech. v. Pan American Res., 775 F. Supp. 759, 764 (D. Del. 1991)) (unpublished decision). Rather, a plaintiff's choice of forum is "entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court." Sky Tech. Partners, 125 F. Supp. 2d at 292; see also Danuloff, 1993 WL 738578, at *3. Even assuming that the forum to which an action is removed qualifies as

plaintiff's choice of forum, the plaintiff's choice of forum will not be given substantial weight if the chosen forum lacks any significant contact with the underlying causes of action. Transamerica Corp. v. Trans-American Leasing Corp., 670 F. Supp. 1089, 1093 (D.C. Mass. 1987) (finding that plaintiff's non-resident status rendered its choice of forum non-dispositive under 28 U.S.C. § 1404(a)); Dubois v. Moore, 821 F. Supp 792, 793 (D.C. of Mass. 1993) (concluding that defendant overcame the presumption in favor of plaintiff's choice of forum under section 1404(a)).

Here, Plaintiff did not choose this Court but commenced this action in Massachusetts state court. The Toyobo Companies then removed this action to this Court. Furthermore, while Plaintiff has alleged the placement of a product into the stream of commerce by Second Chance that was purchased by officers in Massachusetts, Plaintiff has not alleged *any* activities by Toyobo that contributed to the purported violations of the Massachusetts Consumer Protection Act that actually occurred in Massachusetts. Indeed, Plaintiff has failed to specify any state where the conduct giving rise to the alleged causes of action against the Toyobo Companies occurred. (See Compl. ¶ 13). Thus, given the foregoing, Plaintiff's choice of forum is not even entitled to the little weight it might otherwise receive. See, e.g., Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1534, 1358 (M.D. Ala. 1998) (observing that plaintiffs' choice of forum is entitled to little deference when claims are brought on behalf of a national class); see also In re Nematron Copr. Sec. Litig., 30 F. Supp.2d 397, 405-06 (S.D.N.Y. 1998); Butcher v. Gerber Prods. Co., No. 1819, 1998 WL 437150, at *10 (S.D.N.Y. Aug. 3, 1998).

4.    **This Court's Familiarity with Applicable Law Is a Neutral Factor.**

Massachusetts's choice of law rules will govern the controlling substantive law to be applied to Plaintiff's claims alleged in the Complaint. See Van Dusen v. Barrack, 376 U.S. 612,

- 18 -

821 (1964) (when a transfer of venue is sought under Section 1404(a) in a diversity case, the transferee court must apply the state law that the transferor court would have applied had the case not been transferred); Ferens v. John Deere Co., 494 U.S. 516 (1990) (same). The application of Massachusetts's choice of law rules, however, does not weigh against transfer here. In the exercise of their diversity jurisdiction, federal courts often undertake the application of choice of law provisions or the substantive law of a state other than that in which they are situated. Indeed, the Western District of Michigan is equally capable of applying the law in this case and therefore, this Court's familiarity with applicable law – at most – should be a neutral factor in the analysis. See Danuloff, 1993 WL 738578, at *5 (action alleging a variety of tortious acts did not present any novel or complex issues and thus, "it does not appear that state tort law is so unique that this fact alone should strongly militate either for or against transfer"); Antioch Co. v. Pioneer Photo Albums, Inc., No. C-3-99-270, 2000 WL 988249, at *5 (S.D. Ohio Mar. 13, 2000) (same) (unpublished decision); National Patent Dev. Corp. v. American Hosp. Supply Corp., 616 F. Supp. 114, 119 (S.D.N.Y. 1984) (a court's familiarity with the governing law "is entitled to little weight in cases where, as here, the governing law presents no complex legal questions and has not been shown to be unclear, unsettled, or difficult"); see also McNic Oil & Gas Co., 23 F. Supp. 2d at 740 n.10 (granting a transfer of venue and finding that court's familiarity with Michigan law is not a "significant countervailing factor").

For all of the above reasons, this Court's familiarity with the law of Massachusetts should have little – if any – bearing on the Court's decision as to whether to transfer this case to the Western District of Michigan.

## CONCLUSION

For all of the foregoing reasons, this Court should transfer the venue of this case to the Western District of Michigan, together with such other and further relief as this Court deems just and proper.

Dated:  November 12, 2004

OF COUNSEL:
Arvin Maskin
Peter A. Antonucci
John B. Strasburger
Joanne M. McLaren
WEIL, GOTSHAL & MANGES LLP
767 Fifth Ave.
New York, NY 10153
(212) 310-8000

TOYOBO CO. LTD. and TOYOBO AMERICA, INC.

By their attorneys,

Neil P. Motenko (BBO #358160)
Andrew J. McElaney, Jr. (BBO #33260)
Rebecca L. Shuffain (BBO #650715)
NUTTER MCCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

## CERTIFICATE OF SERVICE

I, Neil P. Motenko, hereby certify that on the 12th day of November, 2004, I caused a true and accurate copy of the within Memorandum to be served by hand on each other party of record in the Removed Action.

Neil P. Motenko

1378071.2